# EXHIBIT 2

WILMERHALE

December 26, 2023

Susan Muck

+1 628 235 1028 (t)
+1 628 235 1001 (f)
susan.muck@wilmerhale.com

Gregory E. Del Gaizo
Robbins LLP
5060 Shoreham Pl., Ste. 300
San Diego, CA 92122

Re:   *Hawaiian Electric Industries, Inc.*

Dear Mr. Del Gaizo:

I write in response to your October 4, 2023 letter on behalf of George Assad (the "Demand") demanding that the Board of Directors (the "Board") of Hawaiian Electric Industries, Inc. ("HEI" or the "Company") cause HEI to investigate and take various actions to address certain allegations in the Demand against the Referenced Individuals.[1]

The Independent Directors[2] have carefully considered the Demand, and, for the reasons stated below, have determined to reject the Demand at this time as the Independent Directors have concluded that it is not in the best interests of the Company to pursue the actions set forth in the Demand at this time.

I.  **Litigation Arising from the Maui Fires**

As described in further detail below, the allegations in the Demand stem from the occurrence of wildfires in Maui on August 8, 2023 (the "Maui Fires"). The Company, Hawaiian Electric Company ("HECO"),[3] and the Referenced Individuals are facing a number of litigations and other actions related to the Maui Fires. As discussed below, the allegations in the litigations and other actions overlap substantially with the allegations in the Demand.

A.  *The Securities Class Action*

On September 11, 2023, purported shareholders of HEI filed a securities class action captioned *Bhangal v. Hawaiian Electric Indus., Inc. et al.*, Case No. 3:23-cv-04332 (N.D. Cal.

---

[1]   The "Referenced Individuals" consist of any or all of the following individuals who have been identified in any or all of the Demand, the Derivative Action (defined *infra*), and/or the Securities Class Action (defined *infra*): James Ajello, Celeste Connors, Richard Dahl, Admiral Thomas Fargo, Elisia Flores, Peggy Fowler, Gregory Hazelton, Paul Ito, Timothy Johns, Micah Kāne, Michael Kennedy, Shelee Kimura, Mary Kipp, Constance Lau, Kurt Murao, Yoko Otani, Alana Pakkala, Keith Russell, William James Scilacci, Jr., Tayne Sekimura, Scott Seu, Toby Taniguchi, and Ann Teranishi.

[2]   The Independent Directors, who considered the Demand, are Admiral Thomas Fargo, Celeste Connors, Elisia Flores, Peggy Fowler, and William James Scilacci, Jr.

[3]   HECO is a direct subsidiary of HEI.

WILMERHALE

Gregory E. Del Gaizo
December 26, 2023
Page 2

2023), against the Company and certain Referenced Individuals (the "Securities Class Action"). The court subsequently appointed Daniel Warren and Pomerantz LLP to serve as lead plaintiff and lead counsel, respectively.

The claims in the Securities Class Action are based on purportedly misleading statements made by HEI and certain Referenced Individuals relating to safety efforts and risk mitigation controls. The central allegations in the Securities Complaint are that HEI's public filings contained false and/or misleading statements and/or failed to disclose that (1) HEI's and HECO's wildfire prevention and safety protocols and procedures were inadequate to meet the challenges for which they were ostensibly designed; (2) accordingly, despite knowing the degree of risk that wildfires posed to Maui, HEI's and HECO's inadequate safety protocols and procedures placed Maui at a heightened risk of devastating wildfires; and (3) as a result, HEI's public statements were materially false and misleading at all relevant times.[4] The Securities Complaint alleges that damages are likely substantial, noting that HEI's stock price fell $10.94 per share on August 14, 2023 and $2.54 per share on August 17, 2023.

### B.   *Tort Litigations*

HEI and/or HECO have also been named in more than 70 tort lawsuits (collectively, the "Tort Litigations") that allege, generally, that they were negligent and committed a variety of torts by, among other things, failing to (1) develop a public safety power shutoff plan; (2) implement reasonable fire mitigation procedures; (3) sufficiently fund fire mitigation measures; (4) maintain aging infrastructure; (5) conduct adequate vegetation management; (6) de-energize power lines on August 8, 2023 in response to red flag conditions; and (7) support evacuation on August 8, 2023 due to road blockages from downed equipment.

The vast majority of the Tort Litigations have been filed by individual plaintiffs who allege some or all of the following causes of action: (1) negligence and gross negligence (including breach of duty of care that caused injuries and damages); (2) wrongful death; (3) negligent infliction of emotional distress; (4) ultrahazardous activity (including breach of a heightened duty of care for abnormally dangerous activity); (5) trespass (*i.e.*, harming plaintiffs' property without consent); (6) nuisance (*i.e.*, unreasonable interference with plaintiffs' property rights); and (7) inverse condemnation (*i.e.*, taking private property without just compensation). The Tort Litigations also allege that HEI and/or HECO were purportedly aware of the extreme fire risks created by high winds and HEI's or HECO's own inadequate safety protocols and procedures.[5]

---

[4]   *See* Compl. [ECF No. 1] ¶¶ 3-9, 59, *Bhangal v. Hawaiian Electric Indus., Inc. et al.*, No. 3:23-cv-04332 (N.D. Cal. Aug. 24, 2023) ("Securities Complaint" or "Securities Compl.").

[5]   *See* Compl. [Dkt. No. 1], *Cnty. of Maui v. Maui Electric Co., et al.*, No. 2CCV-23-0000238 PTC (Haw. Cir. Ct. Aug. 24, 2023) ("Maui Compl.").

**WilmerHale**

Gregory E. Del Gaizo
December 26, 2023
Page 3

    **C.**    ***Government Matters and Investigations***

In addition, there are several government investigations and inquiries into the cause of the fires (collectively, the "Government Investigations"). For example, a team from the National Response Team of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is supporting the Maui Fire Department's inquiry into the cause and origin of the Lahaina Fire. The Attorney General of Hawaii has also opened an investigation into the Maui Fires and has hired the Underwriters Laboratories Fire Safety Research Institute to assist with it. The Oversight and Investigations Subcommittee of the House Committee on Energy and Commerce has held a hearing and issued requests for documents and information to HECO.

HEI and HECO are cooperating with each of these investigations.

    **D.**    ***Derivative Action and Demand***

        1.    *Derivative Action*

On September 11, 2023, a purported HEI shareholder, Christina Rice, filed a derivative lawsuit (the "Derivative Action") in the Circuit Court for the First Circuit of Hawaii against the Referenced Individuals.[6] On October 27, 2023, Ms. Rice filed an amended derivative complaint.[7] On December 6, 2023, the Derivative Action was removed to Federal Court.[8]

The Derivative Complaint asserts claims for breach of fiduciary duty, abuse of control, corporate waste, unjust enrichment, and aiding and abetting breach of fiduciary duty, among other things. Specifically, the Derivative Complaint alleges that the Referenced Individuals breached their fiduciary duties to HEI and HECO by, *inter alia*, causing HEI to make "materially false and/or misleading statements" in public filings about "the Company's safety efforts and risk mitigation controls."[9] In addition, the Derivative Complaint alleges that the Referenced Individuals refused to approve needed spending on infrastructure and wildfire safety improvements;[10] substituted capital expenditures for green energy initiatives that purportedly earned HEI bonuses and higher compensation for its executives;[11] knew of the extreme fire danger on August 8, 2023

---

[6]    *See* Verified Shareholder Derivative Compl. [Dkt. No. 1], *Rice v. Connors, et al.*, 1CCV-23-0001181 (Haw. Cir. Ct. Sept. 11, 2023).

[7]    *See* First Am. Derivative Compl. [ECF. No. 1-2], *Rice v. Connors, et al.*, 1:23-cv-00577 (D. Haw. Oct. 27, 2023) (the "Derivative Complaint" or "Derivative Compl.").

[8]    *See* Notice of Removal [ECF No. 1], *Rice v. Connors, et al.*, 1:23-cv-00577 (D. Haw. Dec. 6, 2023).

[9]    Derivative Compl. ¶¶ 104-08.

[10]    *See id.* ¶¶ 51-55.

[11]    *See id.* ¶¶ 97-103.

**WilmerHale**

Gregory E. Del Gaizo
December 26, 2023
Page 4

but failed to adopt a de-energization program;[12] belatedly requested approval from the Hawaii PUC to upgrade equipment;[13] and failed to preserve evidence after the Maui Fires.[14] It also alleges that a pre-suit demand on the Board would be futile.[15] The Derivative Complaint alleges that these breaches of fiduciary duty and other claims have exposed the Company to "more than $3.8 billion in potential liability."[16]

        2.    *Shareholder Demand*

The Demand alleges "breaches of fiduciary duties, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934[,] waste of corporate assets, and unjust enrichment" based on certain of the Referenced Individuals' purported failure "to ensure that [the Company] had robust and effective internal controls over wildfire safety, prevention, and disaster preparedness."[17] In addition, the Demand alleges that certain of the Referenced Individuals "made a series of materially false and misleading statements concerning the Company's wildfire safety and prevention and disaster preparedness controls and procedures."[18] The Demand further alleges that, as a result, the Referenced Individuals "have exposed the Company to billions in damages."[19] Therefore, the Demand asks the Board to "take all necessary steps to investigate, address, and promptly remedy the harm inflicted upon HEI as a result of the misconduct" by the Referenced Individuals.[20]

    **E.**    ***The Substantial Overlap Between Issues in the Securities Class Action, the Tort Litigations, the Government Investigations, the Derivative Action, and the Demand***

As described above, the Demand substantially overlaps with issues in the Securities Class Action, the Tort Litigations, the Government Investigations, and the Derivative Action, and all

---

[12]    *See id.* ¶¶ 61-72.

[13]    *See id.* ¶¶ 73-77.

[14]    *See id.* ¶¶ 109-21.

[15]    *See id.* ¶¶ 133-34. The Board disagrees that demand on the Board would be futile. Moreover, Hawaii law requires that a shareholder serve a written demand on a board before filing a derivative lawsuit.

[16]    *Id.* ¶¶ 129-33.

[17]    Demand at 1.

[18]    *Id.* at 14.

[19]    *Id.* at 24.

[20]    *Id.*

WILMERHALE

Gregory E. Del Gaizo
December 26, 2023
Page 5

involve the same alleged facts and circumstances.[21] For example, the various complaints, like the Demand, allege that the Referenced Individuals and/or the Company:

(1) failed to make needed repairs and upgrades to the Company's electrical infrastructure;[22]

(2) failed to prioritize safety;[23]

(3) caused HEI to make materially misleading statements pertaining to the Company's wildfire prevention and safety protocols while simultaneously failing to maintain critical infrastructure, such as transmission and distribution lines;[24]

(4) knew of the risks to the Company and its consumers regarding potential fires yet failed to mitigate this risk;[25]

(5) failed to prevent several of the Maui Fires that were purportedly ignited by the Company's downed electrical lines;[26] and

(6) failed to prevent the Maui Fires by failing to shut off power during dangerous conditions.[27]

## II. The Board's Initial Response to the Demand and Retention of Outside Counsel

Following receipt of the Demand, the Independent Directors retained experienced, independent counsel to assist them in considering, analyzing, and reviewing the allegations contained in the Demand. The Independent Directors retained Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") and local Hawaii counsel, Settle Meyer Law, a Limited Liability Law

---

[21] The relevant periods in the Securities Class Action, Tort Litigations, Government Investigations, Derivative Action, and Demand also contain significant overlap as they focus on the years leading up to and through the time period around the Maui Fires.

[22] *Compare* Demand at 1-3, 11-13 *with* Securities Compl. ¶¶ 9, 59; Maui Compl. ¶¶ 38-39, 94.

[23] *Compare* Demand at 1-3, 11-13 *with* Derivative Compl. ¶¶ 50, 94.

[24] *Compare* Demand at 14-24 *with* Securities Compl. ¶¶ 9, 59.

[25] *Compare* Demand at 2, 5-6, *with* Securities Compl. ¶¶ 4, 7; Maui Compl. ¶¶ 48, 54, 83, 100.

[26] *Compare* Demand at 2-3, 5-6, 12 *with* Derivative Compl. ¶¶ 3, 69, 87; Maui Compl. ¶¶ 38-39, 51, 53; Securities Compl. ¶ 3.

[27] *Compare* Demand at 2-3, 11, 13-14 *with* Derivative Compl. ¶¶ 61, 69; Maui Compl. ¶¶ 11, 60; Securities Compl. ¶ 60.

**WILMERHALE**

Gregory E. Del Gaizo
December 26, 2023
Page 6

Company ("Settle Meyer"). Neither WilmerHale nor Settle Meyer represents HEI, HECO, or the Referenced Individuals except as independent counsel to the Independent Directors.

On October 6, 2023, HEI's general counsel sent you a letter that acknowledged receipt of the Demand and indicated that the Demand had been forwarded to each member of the Board. That letter also asked you to provide evidence of Mr. Assad's contemporaneous ownership of the Company's common stock during the Relevant Period (as defined in the Demand) through and including the present. Finally, it requested that you provide any information which the Board should be made aware of in connection with its consideration of the Demand.

On November 17, 2023, WilmerHale, on behalf of the Independent Directors, sent you another letter indicating that the Demand was being considered, analyzed, and reviewed and again invited you and Mr. Assad to submit to WilmerHale any available information or evidence that supports and supplements the assertions in the Demand.

To date, WilmerHale has not received any documentation evidencing Ms. Assad's contemporaneous ownership of the Company's common stock during the Relevant Period through and including the present. Similarly, WilmerHale has not received any additional information or evidence from you or Mr. Assad that supports or supplements the assertions in the Demand.

**III.    The Board's Consideration of the Demand**

Following receipt of the Demand, the Independent Directors carefully deliberated and discussed the Demand to determine how to respond in the best interests of HEI. Among other things, the Independent Directors met on multiple occasions[28] with WilmerHale and Settle Meyer to review, analyze, and consider the Demand in light of applicable law, including issues relating to independence of directors, statute of limitations, and the elements of each claim alleged in the Demand. After consideration of the applicable statutes of limitation and the elements of each claim alleged in the Demand, the Independent Directors resolved to seek Tolling Agreements from each of the Referenced Individuals to preserve any potential claims.

In addition, at a December 6, 2023 Board meeting attended by the Independent Directors, counsel for the Company at Skadden, Arps, Slate, Meagher & Flom LLP and at Munger, Tolles & Olson LLP reviewed the status of the Securities Class Action, Derivative Action, Tort Litigations, and Government Investigations.

Thereafter, the Independent Directors and their counsel continued to consider the Demand. Among other things, the Independent Directors analyzed in detail the overlap between the issues in the Demand and those in the Securities Class Action, Derivative Action, Tort Litigations and

---

[28]    Formal meetings to consider the Demand were held on October 14, 2023; November 1, 2023; December 6, 2023; and December 20, 2023.

WILMERHALE

Gregory E. Del Gaizo
December 26, 2023
Page 7

Government Investigations. After carefully considering the Demand and these substantially similar matters, among others, the Independent Directors concluded that, in the exercise of their business judgment and pursuant to Hawaii Revised Statute section 414-221, it would not be in the best interests of the Company to maintain or pursue the claims in the Demand at this time for the reasons discussed below. At a meeting on December 20, 2023, the Independent Directors resolved that it is not in the best interests of the Company to maintain or pursue the claims in the Demand at this time and therefore that the Demand should be rejected at this time.

      **A.** *Taking the steps proposed in the Demand could substantially compromise HEI's position in the Securities Class Action, Derivative Action, and Tort Litigations and lead to adverse consequences in ongoing and future Government Investigations*

It is well-settled that a board, in assessing a stockholder demand, may consider related litigation, including whether taking the demanded action could negatively impact a company's litigation position.[29] In particular, a board may consider the litigation environment, including: (1) the likelihood of success in asserting claims; (2) damages recoverable in the event of success; (3) costs of pursuing claims, including legal fees incurred by the corporation bringing the claims and legal fees incurred by individuals whom the corporation sues in defending the claims; (4) corporate resources such as management time that would be devoted to the claims; and (5) the potential impact of pursuing claims on other litigation or proceedings, statutes of limitations, and any other factors a board deems relevant in the exercise of its business judgment.[30]

Here, as discussed above, HEI and HECO are currently defending various litigations and are involved in Government Investigations that stem from the Maui Fires. The steps proposed in the Demand, including investigating and asserting legal claims against the Referenced Individuals for purported wrongdoing in connection with the Maui Fires, could substantially compromise HEI's and HECO's positions in the Securities Class Action, Derivative Action, and Tort

---

[29]     *See, e.g.*, *Lambrecht v. O'Neal*, 504 F. App'x 23, 27-28 (2d Cir. 2012) (applying Delaware law and holding in double derivative context that compromise of pending litigation was appropriate factor for a board to consider when assessing whether to reject a demand); *In re Merrill Lynch & Co., Inc., Secs., Derivative and ERISA Litig.*, 773 F. Supp. 2d 330, 348 (S.D.N.Y. 2011) (applying Delaware law and holding in double derivative context that a board's conclusion that negative consequences of acting on demand to success of other pending litigation and government inquiries outweighed benefits of acting on demand was a reasonable basis on which to refuse to act on demand); *Morefield v. Bailey*, 959 F. Supp. 2d 887, 899-900 (E.D. Va. 2013) (applying Nevada law, which looks to Delaware law, and holding that impact on pending SEC investigation and federal securities action and cost-benefit analysis of potential recovery in light of costs of bringing and defending individual defendants in such a suit were proper considerations in exercise of board's business judgment in responding to shareholder demand).

[30]     *See, e.g.*, *Lambrecht*, 504 F. App'x 23; *Merrill Lynch & Co., Inc., Secs., Derivative and ERISA Litig.*, 773 F. Supp. 2d 330; and *Morefield*, 959 F. Supp. 2d 887.

WilmerHale

Gregory E. Del Gaizo
December 26, 2023
Page 8

Litigations; erode or limit insurance available to the Company; and otherwise lead to adverse consequences in ongoing and future Government Investigations.

For example, the Demand asks the Board to cause HEI to bring suit against the Referenced Individuals for, among other things, making "false and misleading statements concerning the Company's wildfire safety and prevention and disaster preparedness controls and procedures."[31] HEI's assertion of such a claim against the Referenced Individuals could be construed as an admission of liability by HEI or HECO. Moreover, to prevail against the Referenced Individuals, HEI would need to allege and prove facts similar to those that the plaintiffs in the Securities Class Action, Derivative Action, and Tort Litigations will be attempting to establish. Similarly, government agencies investigating the Maui Fires would likely cite or rely on allegations or claims made by HEI about the Referenced Individuals as evidence *against* HEI and HECO. Therefore, taking the steps proposed in the Demand could substantially compromise HEI's and HECO's positions in the Securities Class Action, the Derivative Action, and the Tort Litigations and lead to adverse consequences in ongoing and future Government Investigations.

> **B.**   *The remote possibility of significant monetary recovery from the Referenced Individuals (even assuming the viability of the claims and allegations asserted in the Demand) weighs against taking the steps proposed in the Demand*

As discussed above, the Demand alleges that HEI faces billions in damages. There is no reasonable likelihood that the Company could recover sums approaching that amount from the Referenced Individuals, which weighs heavily against taking the steps proposed in the Demand.

HEI's Articles of Incorporation contain a provision that exculpates its directors from personal liability to the Company to the extent provided by applicable law, so long as they "acted in good faith and in a manner [they] reasonably believed to be in or not opposed to the best interests of this corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe [their] conduct was unlawful."[32]

Furthermore, a principal theory in the Demand appears to be one of mismanagement, *i.e.*, that the Referenced Individuals failed "to implement and maintain adequate internal controls over wildfire safety and prevention and disaster preparedness[.]"[33] But Delaware and jurisdictions that have adopted the Model Business Corporation Act (like Hawaii), have characterized such theories

---

[31]    Demand at 14.

[32]    Amended and Restated Articles of Incorporation of Hawaiian Electric Industries, Inc., Art. 12 (last amended Nov. 3, 2022).

[33]    Demand at 24; *see also id.* at 25 ("[O]ur client demands that the Company commence legal proceedings against each party identified as being responsible for the false statements, *mismanagement*, and other related misconduct described above." (emphasis added)).

WILMERHALE

Gregory E. Del Gaizo
December 26, 2023
Page 9

as "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment' and noted that, even if the harm to the corporation was caused by a violation of the criminal law, it is not necessarily enough to create a breach of fiduciary duty."[34]

Moreover, under HEI's Articles of Incorporation, Indemnification Agreements, and Hawaii law, the Referenced Individuals are entitled to advancement and indemnification – meaning that HEI would bear the entire cost of the actions the Demand proposes, including defense costs.[35] Moreover, if the Referenced Individuals prevail on the merits, HEI's Articles of Incorporation, Indemnification Agreements, and Hawaii law require the Company to indemnify them.[36] HEI would only be able to recoup the advances if an action by the Company against the Referenced Individuals is successful – and even then, recoupment is uncertain if the Referenced Individuals cannot (or will not) repay the costs.

Finally, even if HEI were to prevail in the action proposed by the Demand and obtain a judgment in its favor, any potential recovery against the Referenced Individuals would likely be trivial as compared to the damages alleged in the Securities Class Action and Tort Litigations. Therefore, any benefits to pursuing the Demand are far outweighed by the costs.

### C. *Additional costs weigh against taking the steps proposed in the Demand*

Additionally, it would not be a prudent expenditure of fiscal and corporate resources to initiate an inquiry into or pursue the claims in the Demand at this time. The actions contemplated in the Demand would be expensive to pursue and duplicative of other claims. As discussed above, the Company is currently engaged in the time-consuming and expensive endeavor of defending against over 70 lawsuits – many of which contain claims that overlap with the claims in the Demand. Even assuming that the allegations in the Demand are true and the claims are viable, initiating an investigation or further litigation involving the same issues and individuals as in the Securities Class Action and Tort Litigations would distract the Company, its executives, and legal team during a time when their attention is required both for ongoing litigation and a host of non-

---

[34] *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1124 (W.D. Wash. 2006) (quoting *In re Caremark Int'l, Inc., Derivative Litig.*, 698 A.2d 959, 967, 972 (Del. Ch. 1996)); *see also Kanter v. Reed*, 92 Cal. App. 5th 191, 211 (Cal. Ct. App. 2023) (allegations of failure of oversight by utility's board were insufficient under *Caremark* and *Marchand v. Barnhill*, 212 A.3d 805 (Del. 2019)); *In re Alphabet Deriv. S'holder Litig.*, 2022 WL 104562, at *4 (N.D. Cal. Apr. 7, 2022) (similar).

[35] *See, e.g.*, *Amended and Restated Articles of Incorporation of Hawaiian Electric Industries, Inc.*, Art. 12, Sections (b) & (e) (last amended Nov. 3, 2022); Haw. Rev. Stat. §§ 414-244, 414-245, 414-247, 414-249.

[36] *See, e.g.*, *Amended and Restated Articles of Incorporation of Hawaiian Electric Industries, Inc.*, Art. 12, Section (c) (last amended Nov. 3, 2022); Haw. Rev. Stat. §§ 414-243 & 414-247.

**WILMERHALE**

Gregory E. Del Gaizo
December 26, 2023
Page 10

litigation matters, and would divert Company resources and result in substantial litigation costs to the detriment of the Company and its shareholders.

### D. *Additional facts will be known in the future that weigh in favor of not pursuing the actions in the Demand at this time*

Finally, additional facts concerning the Maui Fires that are necessary and pertinent for the Independent Directors' review will be available in the future as the Securities Class Action, the Tort Litigations, and the current and future Government Investigations proceed. This is particularly so as the litigation matters are being pursued by highly motivated and incentivized adversaries, and the Government Investigations are being led by highly experienced agencies. The outcomes of these matters and the facts learned in the Securities Class Action, Tort Litigations, and Government Investigations must be considered before taking the actions in the Demand.

Here, there is no risk that the statute of limitations on the claims asserted in the Demand are expiring in the near future. Moreover, the Independent Directors, pursuant to their unanimously adopted resolution, have sought to preserve the Company's rights to pursue the claims in the Demand (and any other claims arising from the Maui Fires) against the Referenced Individuals by seeking tolling agreements from the Referenced Individuals. Therefore, there is no conceivable prejudice to the Company by not maintaining or pursuing the claims in the Demand at this time.

### IV. Conclusion

In view of the foregoing, at a December 20, 2023 meeting of the HEI Board attended by the Independent Directors, the Independent Directors, in the good faith exercise of their business judgment, and having considered the best interests of the Company and its shareholders, concluded that it is not in the best interests of the Company to maintain or pursue the claims in the Demand at this time.

Therefore, after careful deliberation and discussion of all the information made available to the Independent Directors regarding the matters raised by the Demand, and in the good faith exercise of their business judgment, the Independent Directors unanimously adopted a resolution to reject the Demand at this time as the Independent Directors have concluded that it is not in the best interests of the Company to pursue the actions set forth in the Demand at this time.

WILMERHALE

Gregory E. Del Gaizo
December 26, 2023
Page 11

Best regards,

Susan Muck

cc:     Michael Bongiorno (WilmerHale)
        William Meyer (Settle Meyer)