IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| IN RE HAWAIIAN ELECTRIC INDUSTRIES, INC., STOCKHOLDER DERIVATIVE LITIGATION | Lead Case No. 24-cv-00164 MWJS-WRP<br>*Consolidated with*<br>Case No. 24-cv-00247 MWJS-WRP<br>*This Document Relates to All Actions*<br><br>ORDER GRANTING IN PART NOMINAL DEFENDANT'S MOTION TO STAY |

## **INTRODUCTION**

On August 8, 2023, fires ravaged the island of Maui.  They tore through Olinda, through Kula, and, most tragically, through the town of Lahaina.  The flames destroyed thousands of homes and claimed over a hundred lives.  It was the deadliest wildfire in the United States in over a century.

Hundreds of lawsuits followed, many of them faulting the local utility company, Hawaiian Electric Industries, Inc. (HEI), and demanding monetary compensation from it.  This consolidated stockholder derivative action also followed, in which HEI shareholders seek, among other things, to hold certain HEI directors and officers liable for allegedly exposing HEI to staggering amounts of liability in the other pending lawsuits.

HEI has now moved to stay this action.  It argues that without a stay, proceeding in this derivative action would impede its efforts to defend itself in the

other wildfire-related lawsuits against it.  HEI therefore asks that this derivative

action be stayed pending the resolution of the other lawsuits, which are in federal

court in California and in state court in Hawaiʻi.

For the reasons discussed below, the Court agrees that a stay is warranted,

but concludes—at this time—that it should be a more limited stay than the one HEI

has requested.  The Court therefore GRANTS IN PART the motion to stay on the

terms set forth below.

## BACKGROUND

### A.     This Consolidated Shareholder Derivative Action

HEI is a publicly traded corporation that, through its subsidiary electric

utility companies, supplies power to ninety-five percent of Hawaiʻi residents.

Plaintiffs George Assad and Robert Faris allege that they are shareholders of HEI,

and in that capacity, they each filed shareholder derivative suits in the District of

Hawaiʻi.  *See Assad v. Seu*, 24-cv-164 (D. Haw.); *Faris v. Seu*, 24-cv-247 (D.

Haw.).  In their respective actions, Assad and Faris sued the same twenty-six

defendants, all of whom are current or former officers of HEI or directors on its

board (the "Individual Defendants").  On July 3, 2024, the cases were consolidated

into this single derivative action.  *See* ECF No. 74.[1]

---

[1]     Plaintiffs are slated to file a new operative complaint or designate a
previously filed complaint as the operative one by August 2, 2024.  At the hearing

In their consolidated derivative action, Plaintiffs blame certain HEI directors and officers for causing and exacerbating the Maui fires.  For years, Plaintiffs allege, these directors and officers knew about the risk of severe weather events, knew that HEI's equipment was inadequately maintained, and knew that the company's safety protocols were insufficient.  ECF No. 1, at PageID.3 (Compl. ¶ 3).  Not only did they allegedly fail to mitigate these risks, but Plaintiffs claim that they downplayed the risks by making false statements that misled government agencies, HEI shareholders, and the public.  *See id.*

Plaintiffs say these failures directly contributed to the devastation on August 8, 2023.  According to news stories, in the days preceding the fires, weather services had warned of powerful winds that could create fire conditions. *Id.* at PageID.67 (¶ 136).  While HEI "was aware that a power shut-off was an effective [mitigation] strategy," it failed to take that approach.  *Id.* at PageID.68 (¶ 136) (quoting Brianna Sacks, *Hawaii Utility Faces Scrutiny for Not Cutting Power to Reduce Fire Risks*, Wash. Post (Aug. 12, 2023)[2]).  So on August 8, strong

---

on HEI's stay motion, counsel for Plaintiffs confirmed that they did not expect a new complaint to be substantially different from the existing ones or to materially alter the merits of the motion.  Because the parties designated *Assad* as the lead case, and because the motion to stay was filed in the *Assad* case, this Order principally refers to the *Assad* complaint.

[2]     https://www.washingtonpost.com/climate-environment/2023/08/12/maui-fire-electric-utility/ [https://perma.cc/FP26-KGK2].

winds knocked down energized utility poles.  *Id.*  Those downed lines, media outlets reported, ignited the surrounding brush, causing the fires that decimated Lahaina and took over a hundred lives.  *Id.* at PageID.67 (¶ 136).

Plaintiffs allege that the fires—and the subsequent critical news coverage—sunk HEI's stock price.  In a matter of days, the price fell by more than half, erasing around $2 billion of HEI's market capitalization.  *Id.* at PageID.5 (¶ 7).

All told, Plaintiffs estimate that the Individual Defendants' wrongdoing will cost HEI upwards of $3.8 billion from settlements, litigation expenses, infrastructure investment, compensation to the Individual Defendants, and a credit downgrade.  *Id.* at PageID.77 (¶ 150); *see also* Compl. at PageID.5 (¶ 10), *Faris v. Seu*, 24-cv-247 (D. Haw. June 8, 2024) ("HEI is embroiled in numerous lawsuits, subjecting the Company to potential liabilities of approximately $4.9 billion . . . .").  Aiming to recover from the Individual Defendants for the benefit of HEI, Plaintiffs press claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment.  ECF No. 1, at PageID.84-87 (¶¶ 164-79).  They ask for damages—which would go to the company—and reforms to HEI's corporate governance.  *Id.* at PageID.87-89.

### B.    Other Actions

In addition to this consolidated action, the Maui fires spawned hundreds of other suits.  They fall into four separate categories.

First, over 400 tort actions were filed in Hawaiʻi state court against HEI. *See* ECF No. 31-4 (spreadsheet of state tort cases).  These cases seek compensatory and punitive damages.  Trials are set to begin in November 2024.

Second, an HEI shareholder filed another derivative action in Hawaiʻi state court.  *Rice v. Connors*, Civ. No. 1CCV-23-0001181 (Haw. Cir. Ct.).  That case similarly brings claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as claims for abuse of control and violation of a statutory record inspection right.  *Id.* (Dkt. No. 80, Second Am. Compl.).  A motion to stay that action is pending in state court.  *Id.* (Dkt. No. 85).

Third, a putative securities class action against HEI was filed in federal court in the Northern District of California and has been assigned to the Honorable Jacqueline Scott Corley, United States District Judge.  *Bhangal v. Hawaiian Elec. Indus., Inc.*, No. 3:23-cv-04332 (N.D. Cal.).  It alleges that HEI and certain individual defendants made misleading statements about HEI's wildfire risk mitigation efforts.  *Id.* (ECF No. 70, Am. Compl.).  A motion to dismiss is pending, and a hearing is scheduled for September 12, 2024.  *Id.* (ECF No. 81).

Finally, three other shareholder derivative actions were also filed in the Northern District of California.  Those three cases were consolidated and, like the putative securities class action, are proceeding before Judge Corley.  *See In re Hawaiian Elec. Indus., Inc. & Hawaiian Elec. Co., Inc. Derivative Litig.*, No. 3:23-

5

cv-06627 (N.D. Cal.).  Like this action, the California consolidated derivative

action asserts claims for breach of fiduciary duty, waste of corporate assets, and

unjust enrichment.  *Id.* (ECF No. 25-2, Am. Compl.).  It also brings common-law

claims of gross mismanagement and abuse of control, as well as a federal statutory

claim of securities fraud.  *Id.*  HEI filed a motion to dismiss and a motion to stay.

*Id.* (ECF Nos. 29 & 30).  A hearing on both motions is set for September 26, 2024.

### C.      This Motion to Stay

HEI—in its capacity as nominal defendant—moves to stay this action

pending resolution of the other wildfire-related cases.  ECF No. 31.  It principally

argues that this derivative suit is at odds with the other cases, for it seeks to

establish the liability of the Individual Defendants *on behalf* of HEI, whereas HEI

is defending *against* such liability in those other actions.  ECF No. 31-1, at

PageID.218-20.  For that reason, HEI requests that the federal securities and state

tort cases against HEI proceed first, with a derivative action against the Individual

Defendants to follow if (and only if) HEI is held liable in those other actions and

there are damages to recover from the Individual Defendants.  HEI additionally

argues that, to the extent any derivative action should proceed now, it should be the

one in the Northern District of California.  Plaintiffs oppose the motion.

The Court held a hearing on the motion on July 19, 2024.

# DISCUSSION

A derivative action is brought by a shareholder to enforce a right that the corporation "may properly assert but has failed to enforce."  Fed. R. Civ. Pro. 23.1(a).  Its purpose "is to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers."  *Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014) (cleaned up).  Because a derivative action is brought for the benefit of a corporation, it must represent the best interests of the corporation.  *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 785-86 (Del. 1981).

The motion to stay this derivative action presents questions about where, exactly, HEI's interests lie.  The federal securities action and the hundreds of state tort actions all seek to find HEI directly liable for wrongdoing.  Meanwhile, this consolidated derivative action, like the one pending in California, seeks to recover from directors and officers for the benefit of HEI.  The size of that recovery depends, at least in part, on whether the direct actions find HEI liable and how substantial the damages are.

No party here disputes, of course, that it is in HEI's interests to not be found liable for wrongdoing.  To the extent that a derivative suit attempts to prove wrongdoing on the part of HEI's directors and officers while a direct action seeks to prove wrongdoing on the part of HEI itself, HEI would not want the derivative

7

suit to proceed.  It is therefore common for corporations to seek stays in derivative suits pending resolution of other related actions, as HEI does here.

But if liability were eventually established in the direct actions, HEI's interests would suddenly shift:  it would want indemnification from its directors and officers as promptly and completely as possible.  For that same reason, it might not be in the corporation's best interest to allow derivative actions to languish for years, only to need to be quickly resuscitated and prosecuted when liability is found and damages are assessed.

Accordingly, as part of its consideration of this motion to stay, the Court must balance the corporation's interests in avoiding liability (represented by HEI on this motion) with its interests in expeditious indemnity (represented by the plaintiff shareholders).  The Court now turns to that task.

## A.    The State Cases

HEI's motion suggests that all of the wildfire-related cases—those in both state and federal courts—should be a reason to stay this action.  But the decision to stay a federal case based on a pending state case is governed by the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 843 (9th Cir. 2023) ("[T]he *Colorado River* factors control whether a stay can issue in favor of parallel state proceedings.").  Courts apply the *Colorado River* framework when considering

8

motions to stay derivative actions on the basis of pending state court cases.  *See, e.g.*, *In re Ormat Techs., Inc. Derivative Litig.*, No. 3:10-cv-00177, 2011 WL 3841089, at *5-8 (D. Nev. Aug. 29, 2011) (declining to stay a federal derivative action pending a state derivative action under *Colorado River*, but granting a stay pending a federal securities action); *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1033, 1039-42 (D. Or. 2015) (declining to stay federal derivative action pending a state derivative action under *Colorado River*); *Bell ex rel. Eco Sci. Sols., Inc. v. Taylor*, No. CV 17-00530, 2018 WL 3852088, at *1-5 (D. Haw. Aug. 13, 2018) (same).

Neither party, however, discusses *Colorado River* in their briefs.  HEI instead relies on a court's inherent authority to manage its docket.  And although that authority allows a court to stay cases, it does not permit a court to do so because of parallel state cases.  *See Ernest Bock*, 76 F.4th at 843 ("A docket management stay may not issue in favor of parallel state proceedings if the *Colorado River* factors do not support a stay.").

Accordingly, absent a *Colorado River* analysis, the Court cannot stay this derivative suit pending resolution of the state court cases.  And because HEI has opted not to brief the *Colorado River* doctrine, the Court will not conduct such an analysis at this time.  The Court will therefore consider whether this action should be stayed based solely on the pending federal cases, not the state cases.  Of course,

9

in any future motion to stay, HEI remains free to make a *Colorado River* argument if it wishes to do so.

###### B.     The Other Federal Cases

Federal courts have the inherent power to manage their dockets.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Incidental to this power is the discretion to stay proceedings.  *See id.*; *see also Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

That discretion is guided by balancing the harms and benefits that may arise from a stay.  In particular, courts weigh three factors:  (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  With these factors in mind, the Court considers whether this case should be stayed in light of the related federal actions.

1.   The Court begins by assessing the possible damage resulting from a stay. Because a derivative suit is brought on behalf of a corporation, the Court must consider what harm the corporation itself might suffer, not the harm that the plaintiffs or their attorneys might face.  *See, e.g.*, *In re Ormat Tech.*, 2011 WL 3841089, at *5 (considering the harm that a stay would cause the company).

Plaintiffs here strongly resist the idea of an indefinite stay.  ECF No. 69, at PageID.967-69.  They specifically worry that a stay would lead to discovery-related issues for HEI, such as duplicative efforts and the potential loss of evidence.  And Plaintiffs suggest that an indefinite stay would only delay the implementation of new internal controls at HEI, which would be designed to mitigate the risk of future incidents.

Plaintiffs are correct that courts should be sensitive to the stay's duration.  If a court determines a stay is warranted, it must "balance the length of the stay against the strength of the justification given for it."  *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000).  The "general policy favor[s] stays of short, or at least reasonable, duration."  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007).  And here, given their complexity, it could take years for the cases in the Northern District of California to be fully resolved.

These concerns about a stay with an indefinite duration, however, would be allayed by a shorter stay—such as a stay tied not to the complete resolution of the

11

cases before Judge Corley, but to the more immediate resolution of the pending motions before her.  This is not a novel approach.  Indeed, in many of the cases relied on by HEI, courts stayed a derivative action only until the resolution of a motion to dismiss in the related securities action, rather than through the complete resolution of possible trial and appeals.  *E.g.*, *In re HQ Sustainable Mar. Indus., Inc., Derivative Litig.*, 826 F. Supp. 2d 1256, 1264 (W.D. Wash. 2011) (staying derivative action pending resolution of "motions to dismiss in the related securities litigation"); *Cucci v. Edwards*, No. SACV 07-532, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (granting an unopposed motion to stay "pending a decision regarding the motion to dismiss in the related Class Action Securities case"); *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1052 (N.D. Ill. 2012) (recognizing that "stay[ing] the derivative action pending the conclusion of the [securities] class action . . . could take years," and the "more reasonable approach is to stay the derivative action" pending "a ruling in the [securities] action on a motion to dismiss").

Given its limited duration, a stay of this sort is unlikely to cause significantly duplicative discovery.  At the hearing, counsel for HEI confirmed that it has not produced discovery in the California actions, thereby reducing the risk, at least for now, that HEI will have to produce the same discovery to different parties at different times.  Moreover, if the motions in the California actions are denied in

their entirety, discovery in those cases will progress apace, and the parties in this action can reconsider the appropriate next step.  On the other hand, if the motions to dismiss are granted in whole or in part, the scope of this action might be narrowed, which could limit the discovery necessary here.  The motions before Judge Corley are set for hearing in September 2024, just two months away.  A stay tied to their resolution would both reduce the risk of inconsistent rulings and be far from an "indefinite" stay that Plaintiffs fear.

There is, moreover, little genuine risk that evidence may be lost if the Court enters a more limited stay.  Parties are obliged to preserve relevant evidence, and Plaintiffs have not suggested that any of the Individual Defendants have failed to do so, or that they are likely to fail to do so within the timeframe of a more limited stay.

Nor does the potential delay in implementing internal controls weigh heavily against a limited stay.  While it is true that staying the case might delay Plaintiffs' requested relief—which includes reforms to HEI's corporate governance, *see* ECF No. 1, at PageID.88—a limited stay would, by definition, delay any such reforms in only a limited way.  *See In re Groupon*, 882 F. Supp. 2d at 1049 (staying derivative action pending resolution of a motion to dismiss the parallel securities action, even where plaintiffs requested "reforms to improve corporate governance").

13

For these reasons, a limited stay is unlikely to cause harm to HEI. This factor therefore does not meaningfully weigh against the granting of such a stay.

2. The Court next evaluates the hardship or inequity that might result from allowing this action to proceed. While the effect of *granting* a limited stay would be merely to pause this case until the resolution of the pending motions before Judge Corley, the effect of *denying* a stay would not be so circumscribed. In the absence of a stay, this derivative action would proceed through motions practice and discovery while the California securities action is litigated against HEI. This case would proceed at its own pace, perhaps more slowly, perhaps more quickly. The question is what harms, if any, would flow from this scenario.

HEI argues that actively litigating this case could undermine its defenses in the California securities action. In this action, Plaintiffs seek to prove that certain directors and officers breached their duties and thereby harmed HEI. In the securities action, HEI is trying to *defend* its directors and officers against similar allegations. According to HEI, allowing this case to continue could force HEI to adopt the contradictory positions that its directors and officers breached their fiduciary duties *and* that those same directors and officers acted lawfully in their fiduciary roles. Such a predicament, HEI says, would undercut its witnesses, undermine its defenses, and waste needless resources.

14

The Court agrees that these concerns constitute hardship that weighs in favor of a stay. Were the Plaintiffs to "ultimately succeed in the Derivative Action, then the officers' liability could be imputed to [HEI]," which would "undermin[e HEI]'s defense in the Securities Class Action." *In re RH S'holder Derivative Litig.*, No. 18-CV-02452, 2019 WL 580668, at *4 (N.D. Cal. Jan. 23, 2019). Courts frequently rely on such concerns to stay derivative cases. *See, e.g.*, *In re STEC, Inc. Derivative Litig.*, Nos. CV 10-00667 & SACV 10-00220, 2012 WL 8978155, at *6 (C.D. Cal. Jan 11, 2012) (staying derivative action because it could "seriously undermine [the company]'s defense in the Federal Securities Class Action" and "divert financial and management resources"); *In re Ormat Tech.*, 2011 WL 3841089, at *4 (staying derivative action because it would "undermine the credibility of [the company]'s witnesses and defense in the Securities Class Action"); *In re First Solar Derivative Litig.*, No. CV-12-00769, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (staying derivative suit where company would have to "pursu[e] potentially divergent strategies," which would "increase the cost of the overall litigation").

Plaintiffs, however, cite cases suggesting that this view of possible hardship is overly "formalistic." *See, e.g.*, *In re Galena Biopharma, Inc.*, 83 F. Supp. 3d at 1044-45; *Carpenters Pension Fund of Ill. v. Neidorff*, No. 4:18 CV 113, 2019 WL 3037194, at *2 (E.D. Mo. July 11, 2019). Any perceived conflict, one court said,

15

is "based on the fact that [the company] is a nominal plaintiff in the derivative action and an actual defendant in the securities class action." *In re Galena Biopharma,* 83 F. Supp. 3d at 1045.  But looking "beyond this formalistic construct," the court found no actual conflict between a securities action, in which "the shareholders seek[] damages from the corporation based on the wrongdoing of its Officers and Directors," and the derivative action, in which "shareholder[s] seek[] to protect the corporation's rights against the wrongdoing of its Officers and Directors." *Id.* (quoting *Smith ex rel. Apollo Grp., Inc. v. Sperling*, No. CV-11-0722, 2012 WL 79237, at *2 (D. Ariz. Jan. 11, 2012)).

This Court disagrees with that assessment.  The concern is not merely the formalism that the corporation is named as a defendant in both actions.  Nor is the concern merely that both cases are trying to prove the wrongdoing of the corporation's officers.  Rather, the concern is the posture, as a practical matter, of the corporation itself:  In one, it is actively defending its officers from allegations of wrongdoing.  In the other, it is, through plaintiff shareholders acting on its behalf, trying to establish wrongdoing on the part of its officers.  If a corporation has appropriately determined that it is in its interests to defend itself against liability in a pending securities suit (and no one here disputes that it is appropriate for HEI to have taken that view), then it cannot also be in its interests to have its shareholders actively working to prove the liability of its officers in a related

derivative suit.  Put differently, as long as a corporation is legitimately defending itself, it cannot be in the corporation's interest to have its shareholders endeavoring to undermine its defenses.  There is an inherent tension in those postures.

Plaintiffs further contend that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'"  ECF No. 69, at PageID.967 (quoting *Lockyer*, 398 F.3d at 1112).  Again, the hardship that HEI would face is not merely the fact that its directors and officers would be parties to another action, but the fact that HEI would be assuming contradictory positions.

Plaintiffs next argue that, in any event, the risk of undermining HEI's defenses is overstated, as it would only materialize when Plaintiffs begin deposing HEI directors and officers.  *Id.* at PageID.969.  To manage that potential hardship, Plaintiffs propose deferring depositions of important directors and officers.  The Court, according to Plaintiffs, could determine threshold motions on the pleadings, while Plaintiffs "streamline the discovery process by coordinating discovery with the Pending Actions."  *Id.* at PageID.970.

Although a deposition is one way for damaging evidence to surface, *see In re STEC*, 2012 WL 8978155, at *6 n.6, it is not the only way.  Absent a stay, Plaintiffs would still serve written discovery demands, which would seek to prove their theories of liability against the Individual Defendants.  Moreover, if coordinating with the plaintiffs in the direct actions, Plaintiffs here would

17

presumably try to influence the discovery requests in those cases, including, perhaps, by proposing deposition questions that explore their theories of liability. Accordingly, while the risk of undermining HEI's defenses would be somewhat dampened by delaying depositions, it would not be entirely abated. Considerations of hardship and inequity thus weigh in favor of a stay.

Note, however, that the foregoing discussion assumes it is possible, through the grant of a stay here, to avoid simultaneous litigation of the federal securities action and a federal derivative action. But that will only be possible if Judge Corley ultimately grants HEI's motion to stay or its motion to dismiss the consolidated derivative action in California. For if Judge Corley denies the motions to stay and dismiss before her, then HEI will simultaneously face litigation in a securities action and a derivative action, regardless of what this Court does. And in that event, Plaintiffs here would have a strong argument that this derivative action should also go forward so that Plaintiffs might coordinate with the plaintiff shareholders in California.

Accordingly, this second factor supports a limited stay pending the resolution of the motions before Judge Corley, but it does not—at least at this time—support a lengthier stay pegged to the complete resolution of those cases.[3]

---

[3]     HEI has also filed a motion to stay the derivative action pending in Hawaiʻi state court, and the resolution of that motion might similarly bear on the question

3.  Finally, the Court considers whether a stay would promote the orderly course of justice.

HEI contends that, because of the overlap between the cases, a stay of this action would promote judicial economy and avoid the risk of inconsistent rulings. ECF No. 31-1, at PageID.238.  The Court agrees.  Allowing the derivative action to proceed, at this early stage, would create duplicative litigation.  Indeed, Plaintiffs concede that there are "factual similarities among the Securities [Action] . . . and this Derivative Action."  ECF No. 69, at PageID.964 (emphasis omitted).

But Plaintiffs rejoin that the "legal issues are distinguishable," because the cases present "different claims against different defendants, with different legal theories, elements and standards."  *Id.*  For example, Plaintiffs insist that whether certain statements were misleading under federal securities law "bears little weight" on the question of whether the Individual Defendants breached their fiduciary duties by failing to implement mitigation efforts.  *Id.* at PageID.965.

That argument elides the similarities between the cases.  In this action, Plaintiffs allege that the Individual Defendants made "materially false and misleading statements" that "misled the public regarding the Company's readiness

---

of whether a lengthier stay of this action is warranted.  More specifically, Plaintiffs might contend that if the state court allows the state derivative action to go forward, then there is less of a need to stay this derivative action.  If the state court instead grants the stay motion, HEI might make the opposite argument.  Both parties are free to address that issue in future stay litigation.

for [severe weather] events."  ECF No. 1, at PageID.46 (Compl. ¶ 105).  In the securities action, plaintiff alleges that "HEI repeatedly misled investors to believe that the Company was taking appropriate action to mitigate this wildfire risk, when in fact, HEI was failing to do so."  Am. Compl. at 5 (¶ 4), *Bhangal*, No. 3:23-cv-04332 (N.D. Cal. Mar. 8, 2024).  Both cases raise strikingly similar arguments about the statements issued by HEI and its officers.  And both allege that many of the same statements were false and misleading and, thus, form the basis of liability.  *Compare id.* at 49-62 (¶¶ 158-59, 166-69, 172-73, 174-77, 178-81, 184-85, 186-91, 200-03) (discussing Form 10-K and ESG reports for years 2018 through 2022), *with* ECF No. 1, at PageID.47-65 (¶¶ 106-07, 110, 113-16, 118, 120-21, 123, 125-27, 131-32) (discussing the same forms).

It is true, as Plaintiffs point out, that this derivative action is arguing that the failure to implement mitigation efforts *itself* constitutes a breach of fiduciary duties.  *See* ECF No. 69, at PageID.965.  It is also true that the securities action does not advance a claim solely based on the failure to implement mitigation efforts.  But the securities action raises a closely related question:  whether HEI's statements about its fire mitigation efforts were false and misleading.  And answering that question requires an inquiry into whether mitigation efforts were, in fact, implemented.  *See* Am. Compl. at 5 (¶ 4), *Bhangal*, No. 3:23-cv-04332 (N.D. Cal. Mar. 8, 2024) (alleging that "HEI repeatedly misled investors" into thinking

that it was "mitigat[ing] this wildfire risk, when *in fact*, HEI was failing to do so" (emphasis added)).

In any event, "the law does not require that the parties and the claims be identical" for a stay to issue. *In re STEC, Inc.*, 2012 WL 8978155, at *6; *see also In re RH*, 2019 WL 580668, at *4 (noting that "identical claims are not a prerequisite for granting a stay"). There can be differences in the allegations, in the parties, and in the claims—indeed, some differences are to be expected. *See In re Ormat Tech.*, 2011 WL 3841089, at *5 (observing that "difference[s] in claims arise[] from the nature of each action, that is, the way in which all shareholder derivative actions differ from securities class actions").

Consider *In re Molycorp, Inc. Shareholder Derivative Litigation*, C.A. No. 7282, 2014 WL 1891384 (Del. Ch. May 12, 2014), which Plaintiffs cite for the proposition that a stay is inappropriate because of the different actions' "distinct legal theories and remedies." ECF No. 69, at PageID.965. In that derivative case, the Delaware Court of Chancery lifted a stay that it had previously imposed, but only after the plaintiffs had amended their complaint to "eliminate[]" any "material overlap in claims or theories of liability" between the derivative action and the parallel securities action. *In re Molycorp, Inc.*, 2014 WL 1891384, at *4. The court noted that, "where neither the claims nor the theories of liability overlap," both actions may proceed. *Id.* at *7. But when allegations somewhat overlap, such

21

that a corporation may be "forced to adopt conflicting litigation strategies," a stay may be warranted.  *Id.* at \*5.  And here, Plaintiffs do not seriously dispute that there is at least some overlap between their theories of liability and that of the securities action, such that HEI's positions might be inconsistent.

Setting aside these similarities, Plaintiffs state that the "[m]ore important[]" difference between the cases is the relief sought:  while the securities action seeks "money damages *from the Company*," this derivative action seeks "monetary and injunctive relief *for the benefit of the Company*."  ECF No. 69, at PageID.964-65. The fact that Plaintiffs identify this point—where the money is coming from—as the most salient difference underscores that this action is, in many ways, contingent on the others.  As Plaintiffs themselves appear to recognize, the core difference between this case and the securities action is not that there are independent theories of liability, but that the money would be coming from different entities.

This case therefore resembles a case for indemnification.  *Id.* at PageID.953 ("Responsibility for paying the Company's damages rests squarely with the Individual Defendants.").  And in such cases, a stay is amply appropriate.  *See, e.g.*, *In re Molycorp, Inc.*, 2014 WL 1891384, at \*5 (recognizing that "derivative action[s] seeking indemnification for the corporation's liability from the directors" are "frequently" stayed "in favor of the actions in which the corporation's primary

liability will be adjudicated"); *see also Brenner v. Albrecht,* C.A. No. 6514, 2012 WL 252286, at *6 (Del. Ch. Jan. 27, 2012) ("[T]he wisdom as a practical matter of treating indemnification claims as unripe until the liability for which indemnification is sought is determined is plain."); *In re BofI Holding, Inc. S'holder Litig.*, 848 F. App'x 234, 236 (9th Cir. 2021) (holding that claims based on liability assessed in parallel securities action were unripe).

In sum, the derivative and securities actions are similar enough that staying this case, at least for now, would preserve judicial resources. A stay might also streamline this action and avoid inconsistent rulings. A motion to dismiss is pending before Judge Corley in the securities action, set for hearing in September 2024. Resolution of that motion might substantially narrow the scope of this action. *See In re Twitter, Inc. S'holder Derivative Litig.*, C.A. No. 18-062, 2018 WL 3536085, at *3 (D. Del. July 23, 2018) (granting stay "for a limited period" where it would "likely simplify the issues in the instant case"), *report and recommendation adopted*, 2018 WL 4326986 (D. Del. Sept. 10, 2018). Moreover, in the California derivative action, a motion to dismiss and a motion to stay are pending before Judge Corley. They are also scheduled for hearing in September 2024. Staying this case to await Judge Corley's rulings on those motions will avoid the risk of inconsistent decisions on similar issues.

The Court therefore finds that the orderly course of justice weighs in favor of a limited stay pegged to the resolution of HEI's motions to dismiss and motion to stay pending before Judge Corley.[4]

4.  One final point warrants mention.  The parties dispute which of the two consolidated derivative actions should proceed.  HEI argues that, if either must go forward, it should be the California case.  ECF No. 31-1, at PageID.241-42.  From HEI's perspective, the California derivative action contains a broader set of claims and is pending before Judge Corley, who is also overseeing the securities action.

Plaintiffs argue that Hawaiʻi is the proper venue for a derivative action, as it is the home of HEI and the state where the alleged wrongdoing occurred—and it is, painfully, the state where the harms were most searingly and significantly felt. ECF No. 69, at PageID.961-64.  Plaintiffs additionally claim that the shareholders in the California derivative action might lack standing, as they failed to serve a written demand on HEI prior to filing suit.

The Court need not decide which district is the better fit for this action.  For now, the overlap between this suit and the securities action is sufficient to justify a stay.  Moreover, a motion to dismiss is currently pending in the California

---

[4]     At the hearing on the stay motion, HEI argued that the stay should also be tied to any motions to dismiss that might be filed by individual defendants in the California derivative action.  The Court declines, at this time, to tie its stay to motions that have not yet been filed, but HEI may renew this argument at a future date.

derivative action.  For this Court to determine which district should be home to a derivative action, it would need to know whether the California action could even proceed, which in turn would require it to consider the merits of a motion pending before a different judge.  To do so would be both improper and unnecessary.

With that said, the next steps in the California actions will bear on the proper handling of this case.  The Court will therefore stay this case until resolution of both (1) HEI's motion to dismiss in the California securities action and (2) HEI's motion to dismiss or motion to stay in the California derivative action.  Plaintiffs will remain free to move for dissolution of the stay upon a showing of good cause.  And HEI will remain free to move for a longer stay after this more limited stay has been lifted.

## CONCLUSION

For the foregoing reasons, HEI's motion to stay is GRANTED IN PART. This action will remain stayed until the resolution of HEI's motion to dismiss in *Bhangal v. Hawaiian Electric Industries, Inc.*, No. 3:23-cv-04332 (N.D. Cal.), and the resolution of HEI's motion to dismiss or motion to stay in *In re Hawaiian Electric Industries, Inc. & Hawaiian Electric Company, Inc. Derivative Litigation*, No. 3:23-cv-06627 (N.D. Cal.).  For good cause, Plaintiffs may move at any time to dissolve this stay.

Within seven days of a decision on any of the above-mentioned motions, Defendants should notify this Court.  Once the Court has been notified that the motions in both cases have been resolved, it will lift the stay within thirty days. Within that thirty-day window, HEI may file a new motion for a stay and request that the existing stay be extended until the resolution of that new motion.

In light of the stay, the Court DIRECTS the Clerk's Office to administratively close this case.  This administrative closure is solely an administrative matter.  It does not impact any party's rights or obligations, does not alter any previous rulings by the Court, and does not require a filing fee to reopen the case.

IT IS SO ORDERED.

DATED:  July 30, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00164 MWJS-WRP; *In Re Hawaiian Electric Industries, Inc., Stockholder Derivative Litigation*; ORDER GRANTING IN PART NOMINAL DEFENDANT'S MOTION TO STAY